**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

LA TIDTUS JONES                                                                                    PLAINTIFF

v.                                                                           CIVIL ACTION NO. 5:13cv82-MTP

RON KING, ET AL.                                                                                DEFENDANTS

**OPINION AND ORDER**

THIS MATTER is before the Court on the Motion for Summary Judgment [68] filed by Defendants Officer Unknown Arrington, Chiquita Brown, Latasha Clay, Hubert Davis, A. Keys, Malcom T. McClendon, Gia McLeod, Brenda Sims and Laura Tilly; the Motion for Summary Judgment [71] filed by Defendants Raymond Briggs, Raymond Byrd, Monica Carter, Rosemary Gatlin, and Lakichia Wilson; the Motion for Summary Judgment [73] filed by Defendants Unknown Jackson and Frank Shaw; the Motion for Summary Judgment [75] filed by Defendant Ruth Saucier and P. Wiley-Davis; and the Motion for Partial Summary Judgment [85] filed by Plaintiff La Tidtus Jones. After careful consideration of the motions, the submissions of the parties, and the applicable law, the Court finds that the Motions [68], [71], [73], and [75] should be GRANTED, and Motion [85] should be DENIED.

**BACKGROUND**

Plaintiff La Tidtus Jones is a post-conviction inmate in the custody of the Mississippi Department of Corrections ("MDOC") currently incarcerated at the East Mississippi Correctional Facility ("EMCF"). He filed this civil rights action pursuant to 42 U.S.C. § 1983 on or about May

1

24, 2013.[1] The alleged events giving rise to this lawsuit occurred while Jones was incarcerated at the South Mississippi Correctional Institution ("SMCI") and the Wilkinson County Correctional Facility ("WCCF"). Jones's claims and relief sought were clarified and amended by his sworn testimony at a *Spears*[2] hearing held on September 30, 2014.[3]

Jones alleges numerous, separate acts of wrongdoing on the part of each defendant or small group of defendants. The claims include use of excessive force, failure to protect, denial of access to the courts, deliberate indifference to medical needs, and false accusations. The Court will discuss each claim more fully *infra*. Plaintiff seeks monetary damages in the amount of one billion dollars.[4]

## **STANDARD**

A motion for summary judgement will be granted when "the record indicates that there is 'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental*

---

[1] *See* Complaint [1] at 4. The "mailbox rule" applies to a prisoner's pro se complaint alleging a § 1983 action against state prison officials, meaning it is deemed "filed" as of the date he deposited it in the prison mail system, not as of the date it was received by the district court clerk. *See Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). In this case, the date the Plaintiff's complaint was "filed" was sometime between May 24, 2013, the day it was signed by the Plaintiff, and June 6, 2013, the day it was received by the clerk of court.

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

[3] *See Flores v. Livingston*, 405 Fed. App'x 931, 932 (5th Cir. 2010) (stating that allegations made at a Spears hearing supercede claims alleged in the complaint). The contents of the hearing were set forth in the Omnibus Order [59].

[4] Omnibus Order [59] at 4.

*Examiners*, 204 F.3d 629, 633 (5th Cir. 2000). The court must view "the evidence in the light most favorable to the nonmoving party." *Id.* However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). In the absence of proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted). The nonmovant cannot survive a proper motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 199 (5th Cir. 1988); *see also Celotex*, 477 U.S. at 325-26. Instead, the nonmovant must present evidence sufficient to support a resolution of the factual issues in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## ANALYSIS

Failure to Exhaust

Plaintiff alleges that Defendant Gatlin denied him the right to access the courts by refusing to give him a CD containing an omnibus transcript relevant to one of his lawsuits.[5] He further alleges that Defendants Briggs and Wilson used excessive force against him on May 14, 2013, and that Defendants Carter and Byrd witnessed the attack and failed to protect him.[6] Finally, Plaintiff alleges that Defendants Shaw, Jackson, and Wiley-Davis witnessed other inmates attack him on various occasions and failed to act.[7]

---

[5]*See* Omnibus Order [59] at 4.

[6]*Id.* at 3.

[7]*Id.* at 4.

Defendants Gatlin, Byrd, Briggs, Wilson and Carter ("the CCA Defendants"),[8] as well as Defendants Shaw and Jackson ("the MTC Defendants"),[9] have filed motions for summary judgment, claiming they are entitled to judgment as a matter of law due to Plaintiff's failure to exhaust administrative remedies. Defendant Wiley-Davis also raised the affirmative defense of failure to exhaust administrative remedies in her answer to the complaint.[10]

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires prisoners to exhaust any available administrative remedies prior to filing suit under 42 U.S.C. § 1983. A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006); *see also Johnson v. Ford*, 261 Fed. App'x 752, 755 (5th Cir. 2008) (stating that the Fifth Circuit takes a "strict approach" to the PLRA's exhaustion requirement) (citing *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)); *Lane v. Harris Cnty. Med. Dep't*, No. 06-20935, 2008 WL 116333, at *1 (5th Cir. Jan. 11, 2008) (stating that under the PLRA, "the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules"). "It is irrelevant whether exhaustion is achieved during the federal proceeding. Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted." *Gonzalez v. Seal*, 702 F.3d 785,

---

[8]*See* Motion for Summary Judgment [71] and Memorandum in Support [72]. These Defendants worked at WCCF while Corrections Corporation of America, a private entity, operated the correctional facility under contract with the MDOC.

[9]*See* Motion for Summary Judgment [73] and Memorandum in Support [74]. These Defendants worked at WCCF while Management Training Corporation operated the correctional facility, following the expiration of MDOC's contract with CCA.

[10]*See* Answer [29] at 3.

788 (5th Cir. 2012). Because exhaustion is an affirmative defense, Defendants bear the burden of demonstrating that Plaintiff failed to exhaust available administrative remedies. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010).

Miss. Code Ann. § 47-5-801 grants the MDOC the authority to adopt an administrative review procedure at each of its correctional facilities. Pursuant to this statutory authority, the MDOC has set up an Administrative Remedy Program ("ARP") through which an offender may seek formal review of a complaint relating to any aspect of their incarceration. The ARP is a two-step process. Inmates are required to initially submit their grievances in writing to the Legal Claims Adjudicator within thirty days of the incident. If, after screening, a grievance is accepted into the ARP, the request is forwarded to the appropriate official, who will issue a First Step Response. If the inmate is unsatisfied with this response, he may continue to the Second Step by using ARP form ARP-2 and sending it to the Legal Claims Adjudicator. A final decision will be made by the Superintendent, Warden, or Community Corrections Director. If the offender is not satisfied with the Second Step Response, he may file suit in state or federal court. *See Cannady v. Epps*, No 3:04cv107-HTW-JCS, 2006 WL 1676141, at *1 (S.D. Miss. June 15, 2006).

*Defendants Gatlin, Byrd, Briggs, Wilson and Carter*

The CCA Defendants offer the affidavit of David Petrie, a Legal Claims Adjudicator employed by the MDOC.[11] According to Petrie, Plaintiff filed three grievances arising from his incarceration at WCCF while CCA operated the facility–No. WCCF-13-482, No. WCCF-13-437, and No. WCCF-13-577. The first two grievances regard Defendant Gatlin.[12] However, neither

---

[11]*See* Affidavit of David Petrie [71-1].

[12]*See* ARP Documents [71-1] at 3-23.

grievance mentions a CD or omnibus transcript, which is the basis of Plaintiff's claim against Defendant Gatlin in the instant action.

One of the principal purposes of the administrative exhaustion requirement is to provide fair notice to prison officials of an inmate's specific complaints so as to provide "time and opportunity to address complaints internally." *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004). The degree of specificity necessary in a prisoner's grievance should be evaluated in light of this intended purpose. *Id.*

As outlined above, Plaintiff's grievances regarding Defendant Gatlin do not concern her alleged refusal to provide him with a copy of an omnibus transcript. Instead, the grievances appear to concern documents relevant to Plaintiff's appeal of his criminal conviction and the Plaintiff's access to the prison library. Neither grievance gave prison officials "fair notice" of the Plaintiff's complaints. Plaintiff did not respond to Defendant Gaitlin's motion, nor does he address these deficiencies in his own motion for partial summary judgment. Accordingly, the Court finds that the Plaintiff has failed to exhaust his administrative remedies as to his claim against Defendant Gatlin.

As for Plaintiff's claims against Defendants Briggs and Wilson, the Court likewise finds that he has failed to properly exhaust his claims. The Plaintiff's uncontradicted institutional records reflect that he submitted grievance No. WCCF-13-557 on June 5, 2013, in which he complains that on May 14, 2013, Defendants Briggs and Wilson grabbed him while he was restrained and slammed him onto the ground. He complains that they continued to strike him and choke him as he lay on the ground.[13] He also states in the grievance that Defendant Carter was present and did nothing to stop Briggs and Wilson. However, Plaintiff did not complete the ARP process as to this grievance until

---

[13]*Id.* at 25-26.

September 2013–nearly four months *after* he filed the instant action.[14] The United States Court of Appeals for the Fifth Circuit has clearly held that exhausting claims after a prisoner files suit in federal court is "irrelevant," and that "pre-filing exhaustion is mandatory." *Gonzalez,* 702 F.3d at 788. Thus, although the Plaintiff ultimately exhausted his claims during the pendency of the instant action, his failure to exhaust prior to filing suit is fatal to his claims against Defendants Briggs, Wilson and Carter. Finally, no grievance filed by the Plaintiff mentions Defendant Byrd.

The Court notes that Plaintiff has not responded to the CCA Defendants' motion for summary judgment, or offered any evidence to the Court contradicting his ARP records. For the reasons outlined above, the Court finds that the CCA Defendants are entitled to judgment as a matter of law, and that Plaintiff's claims against them should be dismissed without prejudice.

*Defendants Shaw and Jackson*

The MTC Defendants offer the remainder of the grievances the Plaintiff submitted at WCCF, and argue that none pertain to the claims Plaintiff has alleged against them in the instant suit. The ARP documents attached to the MTC Defendants' motion for summary judgment include No. WCCF-13-557,[15] No. WCCF-13-31, No. WCCF-13-56, No. WCCF-13-295, No. WCCF-14-40, and No. 14-147.[16] A review of the Plaintiff's grievances reveals that none pertain to, or even mention,

---

[14]Plaintiff was provided a certificate affording him immediate judicial access on that date, due to confusion resulting from the change in operations at WCCF from CCA to MTC during the time the grievance was pending. *Id.* at 27.

[15]As outlined above, this grievance was pending during the time the operation of WCCF was transferred from CCA to MTC. Thus, although Plaintiff filed the grievance while CCA operated the facility, the grievance process was completed after operations transferred to MTC. This grievance concerned the Plaintiff's complaints against Defendants Briggs, Wilson and Carter.

[16]*See* Memorandum in Support [74] at 3; *see generally* ARP Files [73-1].

Defendants Shaw and Jackson. As noted by the MTC Defendants in their supporting memorandum, the number of ARP requests the Plaintiff submitted while housed at WCCF demonstrates that he was familiar with the MDOC grievance process and capable of presenting his complaints to prison officials before resorting to filing suit in federal court.[17] Accordingly, the MTC Defendants are entitled to judgment as a matter of law, and the Plaintiff's claims against them will be dismissed without prejudice.

*Defendant Wiley-Davis*

As outlined above, Defendant Wiley-Davis raised the defense of failure to exhaust administrative remedies in her answer to the Plaintiff's complaint.[18] The Plaintiff's uncontradicted ARP records, which include all grievances filed by the Plaintiff from the time the alleged events at issue occurred,[19] reflect that none of his grievances pertain to Nurse Wiley-Davis or his allegations against her. The Plaintiff has submitted no evidence to the Court demonstrating that he has properly exhausted his claims, despite the fact that multiple defendants have raised the issue. Accordingly, because the Plaintiff has failed to properly exhaust his claim, Defendant Wiley-Davis is entitled to judgment as a matter of law, and Plaintiff's claim against her will be dismissed without prejudice.[20]

---

[17]*See* Memorandum in Support [74] at 7.

[18]*See* Answer [29] at 3.

[19]*See generally* ARP Documents [71-1] ; ARP Files [73-1].

[20]Furthermore, Plaintiff has not demonstrated that exhaustion would have been futile or that administrative remedies were unavailable. Exceptions to the exhaustion requirement are appropriate where the available administrative remedies are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be patently futile. *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994). The Fifth Circuit has taken the position that exceptions to the exhaustion requirement only apply in "extraordinary circumstances," and that the prisoner bears the burden of demonstrating the futility or unavailability of administrative review. *Id*. Plaintiff has failed to establish, or even allege, that the ARP process at WCCF was

Denial of Access to the Courts

Plaintiff alleges that on January 3, 2013, while incarcerated at SMCI, he was wakened by Defendants Davis, Sims, Brown, Keys, Arrington, and McClendon, who are correctional officers at the facility. He alleges that he was forced to leave his unit while the Defendants searched and/or destroyed his legal documents, including transcripts and exhibits relevant to another civil suit he filed as well as his post-conviction proceedings. Plaintiff alleges that the deprivation of these legal documents resulted in the Defendants denying him meaningful access to the courts. Plaintiff states that he has a civil case pending in the United States District Court for the Northern District of Mississippi, and alleges that transcripts relevant to the underlying subject matter of that civil case were taken, hindering his ability to pursue the case. Plaintiff also alleges that several stolen exhibits and transcripts would have shown discovery violations and supported his ineffective assistance of counsel claims in his two separate post-conviction proceedings.

Plaintiff further alleges that Defendants Tilly, Clay and McLeod, all employees at the Inmate Legal Assistance Program ("ILAP") at WCCF, refused to serve process by certified mail upon a defendant in one of the Plaintiff's various lawsuits, and that this denied him access to the courts.

Prisoners have a fundamental constitutional right to "adequate, effective, and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 811 (1977). However, the right of access is not unlimited. "[I]t encompasses only a 'reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement.'" *Johnson v. Rodriguez*, 110 F.3d 299, 310-11 (5th Cir. 1997), *cert. denied.* 552 U.S. 995 (1997). In order to establish a claim for denial of access to the courts, a prisoner must demonstrate that he suffered "actual injury." This, in

---

unavailable, inappropriate, or patently futile.

turn, requires proof that the denial of access "hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 356 (1996).

In regard to the claim concerning the alleged confiscation of the Plaintiff's legal documents, the Court finds that the Plaintiff has offered nothing beyond vague and conclusory allegations that his legal claims were prejudiced. A review of the civil cases filed in the Northern District by the Plaintiff[21] reveals that they were ultimately unsuccessful because of their frivolity and the Plaintiff's failure to state a claim, as opposed to an absence of legal documents.[22] As for the Plaintiff's post-conviction proceeding filed in the Northern District, 4:14cv83-DMB-JMV, the case record reflects that Plaintiff's habeas petition was dismissed as untimely under 28 U.S.C. § 2244(d). The district court did not address the Plaintiff's aforementioned ineffective assistance of counsel claim in its disposition of the petition. In sum, the Plaintiff simply fails to demonstrate that he suffered any "actual injury" from the alleged confiscation of documents in either his civil or post-conviction proceedings.

Plaintiff also claims that Defendants Tilly, Clay, and McLeod refused to serve process by certified mail upon a defendant in one of his civil actions. The Court previously directed the Plaintiff to provide a list of all the civil actions he has filed.[23] In each case listed by the Plaintiff,[24] court records reflect that he proceeded *in forma pauperis*. Pursuant to 28 U.S.C. § 1915(d), the officers of the court issue and serve all process for litigants afforded *in forma pauperis* status–not the

---

[21]*See* Response [63].

[22]*See* Case Nos. 2:12cv125-MPM-DAS, 2:12cv151-NBB-DAS, and 2:12cv31-SA-JMV filed in the United States District Court for the Northern District of Mississippi.

[23]*See* Order [57].

[24]*See* Response [63].

10

Plaintiff, and not the employees of an inmate legal assistance program at a correctional facility. Further, even assuming that the named Defendants were responsible for serving process, the Plaintiff has not alleged, nor presented any evidence, that the unserved defendant was dismissed as a party, or that he suffered any other "actual injury." The Court further notes that Plaintiff has not responded to the Defendants' motion for summary judgment, or made additional arguments as to this claim in his own motion for partial summary judgment.

Accordingly, for the reasons set forth above, the Court finds that Defendants Davis, Sims, Brown, Keys, Arrington, McClendon, Tilly, Clay, and McLeod are entitled to judgment as a matter of law, and that the claims alleged against them should be dismissed with prejudice.[25]

Deliberate Indifference Claim

Plaintiff alleges that he sustained injuries following an excessive use of force on May 14, 2013, and that Defendant Nurse Ruth Saucier was deliberately indifferent to his medical needs by refusing to provide him with care. Specifically, Plaintiff alleges that Saucier failed to examine him, x-ray his injuries, or otherwise monitor his condition.[26]

A prison official violates the Eighth Amendment when he acts with deliberate indifference

---

[25]Although Defendant Davis, Sims, Brown, Keys, Arrington, McClendon, Tilly, Clay and McLeod have raised the defense of qualified immunity, "if it becomes evident that the plaintiff has failed to state or otherwise establish a claim, then the defendant is entitled to dismissal on that basis." *Wells v. Bonner*, 45 F.3d 90, 93 (5th Cir. 1993) (citing *Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991)); *see also Sappington v. Bartee*, 195 F.3d 234, 236 (5th Cir. 1999). Because the Court finds that Plaintiff's allegations are not cognizable as constitutional claims, it need not address the issue of whether the Defendants are entitled to qualified immunity.

[26]*See* Omnibus Order [59] at 3. Plaintiff also initially alleged that following his interaction with Saucier, WCCF correctional officer Ella Scott took him to a dirty shower and locked him inside with restraints. *See id.*; Response [17] at 18. However, at the *Spears* hearing in this case, Plaintiff moved to voluntarily dismiss his claims against several Defendants, including Ella Scott. *See* Omnibus Order [59] at 6; Order [60].

to a prisoner's serious health and safety needs. *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 754 (5th Cir. 2001). A plaintiff must meet an "extremely high" standard to show deliberate indifference. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotations omitted). For a prison official to be liable for deliberate indifference, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

"Unsuccessful medical treatments, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346 (citations omitted). Complaints that more treatment should have been ordered, without more, are insufficient to show deliberate indifference. *See Domino*, 239 F.3d at 756 ("[T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment."). Rather, the plaintiff must show that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

Finally, a prisoner's allegation that prison officials failed to timely provide him with treatment does not, by itself, constitute deliberate indifference. "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference that results in substantial harm. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006).

Although Plaintiff alleges that Saucier refused to examine his injuries on May 14, 2013, medical records submitted to the Court reflect otherwise. Plaintiff attached a record entitled "Facility

Emergency Anatomical Form" to one of his pleadings. The form signed by Defendant Saucier indicates that Saucier did, in fact, examine the Plaintiff following an alleged use of force on May 14, 2013. Defendant Saucier found that the Plaintiff was able to walk, and merely suffered scratches to his left elbow, right knee, and left temple. The record does not reflect that the Plaintiff suffered any other injury.[27] Furthermore, a review of the Plaintiff's complete medical record at WCCF indicates that he ultimately received an x-ray of his right shoulder in September 2013, the results of which were normal.[28]

"Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (affirming district court's dismissal of inmate's deliberate indifference claims as frivolous); *Harris v. Epps*, 523 Fed. App'x 275, 275 (5th Cir. 2013) (per curium) (affirming summary judgment where inmate's medical records reflected that he had received ongoing medical treatment). The Court notes that Plaintiff has not responded to Saucier's motion for summary judgment or offered any evidence contradicting his medical records. *See Celotex*, 477 U.S. at 325-26 (holding that a nonmoving party cannot rest on its pleadings to avoid a proper motion for summary judgment).

While the Plaintiff might be unsatisfied with the treatment he received, or believes that he was entitled to additional treatment, his medical records show that he was promptly evaluated by Defendant Saucier and ultimately received the x-ray he desired. As outlined above, neither a prisoner's disagreement with his medical treatment, nor complaints that more treatment should have been ordered, are sufficient to establish deliberate indifference. *See Gobert*, 463 F.3d at 346;

---

[27]*See* Facility Emergency Anatomical Form [63-1] at 2.

[28]*See* Medical Records [75-1] at 383.

*Domino*, 239 F.3d at 756. Accordingly, the Court finds that Defendant Saucier is entitled to judgment as a matter of law, and that Plaintiff's claim against her should be dismissed with prejudice.

Plaintiff's Motion for Partial Summary Judgment

In his Motion [85], Jones simply repeats his original allegations and references other claims that are not before the Court. Therefore, due to the analysis of Jones's claims *supra*, the Court finds that the Motion [85] should be denied.

## **CONCLUSION**

For the reasons stated above, the Court finds that the Motions [68], [71], [73], and [75] should be GRANTED, and Motion [85] should be DENIED.

IT IS, THEREFORE, ORDERED:

1. That the Motion for Summary Judgment [68] filed by Defendants Arrington, Brown, Clay, Davis, Keys, McClendon, McLeod, Sims and Tilly be GRANTED and the Plaintiff's claims against them be dismissed with prejudice;

2. That the Motion for Summary Judgment [71] filed by Defendants Briggs, Byrd, Carter, Gatlin, and Wilson be GRANTED and the Plaintiff's claims against them be dismissed without prejudice;

3. That the Motion for Summary Judgment [73] filed by Defendants Jackson and Shaw be GRANTED, and the Plaintiff's claims against them be dismissed without prejudice;

4. That the Motion for Summary Judgment [75] filed by Defendant Saucier and Wiley-Davis be GRANTED, the Plaintiff's claim against Saucier be dismissed with prejudice, and the Plaintiff's claim against Wiley-Davis be dismissed without prejudice;

5. That the Motion for Partial Summary Judgment [85] filed by the Plaintiff be DENIED; and

6. That a separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

SO ORDERED this the 14th of August, 2015.

                                                        s/ Michael T. Parker
                                                        United States Magistrate Judge